UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 23-cr-187 (WMW/DJF) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| Frank Irving Wiggins, | |
| Defendant. | |

---

This matter is before the Court on the parties' motions for dispositive and nondispositive relief. The Court held a motion hearing on August 1, 2023, during which the parties' rested their arguments on their briefing. (*See* ECF No. 27.) The Court also accepted two exhibits into evidence. (ECF No. 28.) For the reasons given below, the Court grants the Government's Motion for Discovery (ECF No. 16) and Mr. Wiggins' Motion to Produce 404(b) Evidence (ECF No. 21). The Court also denies Mr. Wiggins' Motion for Jencks Act Material (ECF No. 20) and recommends denying Mr. Wiggins' Motion to Suppress Evidence (ECF No. 22).

**I.    Government's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2 and 26.2 (ECF No. 16)**

The Government seeks discovery and disclosure as required by Rules 12.1, 12.2, 12.3, 16(b) and 26.2 of the Federal Rules of Criminal Procedure. The Government's motion is **GRANTED** insofar as Mr. Wiggins shall provide discovery to the extent required by the applicable Rules. The obligation to provide discovery is continuing. With respect to expert discovery pursuant to Rules 16(a)(1)(G) and 16(b)(1)(C), the following deadlines shall apply:

  a. Initial expert disclosures: 28 days prior to trial.

  b. Rebuttal expert disclosures: 14 days prior to trial.

1

II. **Mr. Wiggins' Motion for Disclosure of Jencks Act Material (ECF No. 20)**

Mr. Wiggins' motion for early disclosure of Jencks Act material is **DENIED**. *United States v. White*, 750 F.2d 726, 728–29 (8th Cir. 1984). However, the Government has agreed to provide any Jencks Act material it has not already disclosed at least three business days prior to the commencement of trial. The Court encourages the Government to disclose Jencks Act material not previously disclosed at least two weeks prior to the commencement of trial, and to engage in "open-file" discovery, if possible, to ensure that there are no unnecessary delays at trial and to promote the fairness of the proceedings.

III. **Mr. Wiggins' Motion to Produce 404(b) Evidence (ECF No. 21)**

Mr. Wiggins' motion for disclosure of evidence the Government may introduce pursuant to Federal Rule of Evidence 404(b) is **GRANTED**. The Government shall make such disclosures at least three weeks prior to trial.

IV. **Mr. Wiggins' Motion to Suppress Evidence Obtained as a Result of Search and Seizures (ECF No. 22)**

Mr. Wiggins seeks to suppress all evidence obtained as the result of a March 10, 2023 search warrant ("March 10 Warrant") allowing for GPS tracking of a 2013 GMC Yukon, and a March 17, 2023 ("March 17 Warrant") search warrant to search that vehicle and his person (ECF No. 22). He argues that both the March 10 Warrant and the March 17 Warrant lacked probable cause, and that the March 17 Warrant was stale at the time of its execution five days after it was issued. For the reasons discussed below, the Court recommends denying the motion.

    a. Factual Background

        i. The March 10 Warrant Affidavit

Detective Troy Peek, a St. Louis Park Police Department official and assignee of the Southwest Hennepin Drug Task Force, applied for the March 10 Warrant based on information he

received from a confidential informant ("CI"). (*See* ECF No. 26-1.) Within the week prior to the March 10 Warrant application, Detective Peek spoke to a CI who informed him that the CI knew a person known as "Frank Wiggins", who was currently in possession of methamphetamine and selling it in the Twin Cities area. (*Id.* at 2.) The CI did not know where Frank Wiggins resided but provided a WhatsApp identification and phone number for Mr. Wiggins. The CI also informed Detective Peek that Mr. Wiggins regularly carried a handgun and drove a white Cadillac truck. (*Id.*)

Based on his own independent investigation, Detective Peek identified "Frank Wiggins" as Defendant Frank Irving Wiggins. (*Id.*) He found Mr. Wiggins' address based on DMV records and showed a photo of him to the CI, who confirmed it was the same Frank Wiggins who was selling methamphetamine. (*Id.*) Mr. Wiggins' DMV records showed that he drove a white GMC Yukon, which Detective Peek said is often confused with a Cadillac truck. (*Id.*) Detective Peek also reviewed Mr. Wiggins' criminal history, which included multiple drug and weapons-related convictions consistent with the CI's allegation the Mr. Wiggins was dealing drugs and often carried a weapon. (*Id.* at 2–3.)

The Warrant Affidavit stated that, with the CI's assistance, Detective Peek had arranged a controlled buy of methamphetamine from Mr. Wiggins to take place the following week, and that it was likely the GMC Yukon would be utilized to facilitate the exchange. (*Id.* at 3.) The March 10 Warrant application sought permission to place a GPS tracker on the GMC Yukon to identify its movements and any possible coconspirators, and to monitor for possible narcotics activity. (*Id.*)

    ii. **The March 17 Warrant Affidavit**

The March 17 Warrant Affidavit, also signed by Detective Peek, incorporated all the factual allegations set forth in the March 10 Warrant Affidavit. (*Compare* ECF No. 26-1, *with*

3

ECF No. 26-2.) In addition, the March 17 Warrant Affidavit detailed the movements of the GMC Yukon based on the GPS tracker. According to the Warrant Affidavit, Mr. Wiggins used the vehicle consistently as a means of transportation. (ECF No. 26-2 at 3.) Surveillance of the vehicle also confirmed that it made frequent stops at parking lots, gas stations, and residences for short, often 1-2 minute, periods of time. (*Id.*)

The controlled purchase Detective Peek had arranged when he prepared the March 10 Warrant Affidavit was completed by the time he prepared the March 17 Warrant Affidavit. The March 17 Affidavit detailed the controlled purchase and stated that it had taken place within the previous 72 hours. (*Id.*) According to the Affidavit, law enforcement officers searched the CI for drugs immediately before the controlled purchase and found nothing. (*Id.*) Officers surveilled the location of the controlled purchase and also set up surveillance at Mr. Wiggins' residence. (*Id.*) Detective Peek monitored the CI on the way to the controlled purchase, while other officers surveilled Mr. Wiggins leaving his residence and driving the GMC Yukon to the meeting site. (*Id.* at 4.) Detective Peek maintained visual contact on the CI after the narcotics purchase, took the substance the CI purchased from Mr. Wiggins directly from him, and performed a field test on the substance, which came back positive for methamphetamine. (*Id.*)

In addition, Detective Peek and another law enforcement officer searched the trash can outside Mr. Wiggins' residence within 36 hours before Detective Peek prepared the March 17 Search Warrant Affidavit. The officers collected a mailer addressed to Mr. Wiggins at that residence, along with two empty plastic baggies. (*Id.*) They performed a field test on the baggies, which tested positive for methamphetamine. (*Id.*)

Detective Peek stated that, in his experience, drug traffickers often store narcotics, narcotics packaging equipment, and firearms in vehicles they use to conduct their illicit business.

4

(*Id.* at 5.) Based on his investigation, Detective Peek said he believed drugs and evidence of drug trafficking would be found in Mr. Wiggins' vehicle and requested permission to conduct a traffic stop while Mr. Wiggins' was operating it in order to search it. (*Id.* at 5.) A Ramsey County judge issued the Warrant on March 17, 2023 (*id.* at 9), and law enforcement officers conducted the stop five days later.

### b. Legal Standard

The Fourth Amendment dictates that "no warrant shall issue, but upon probable cause." The standard for determining whether a search warrant is supported by probable cause is well-established:

> Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances. If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.

*United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) (quotations and citations omitted). "An issuing judge's 'determination of probable cause should be paid great deference by reviewing courts' and should be upheld if the judge had a 'substantial basis for … conclud[ing] that a search would uncover evidence of wrongdoing.'" *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (alterations in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When "the issuing judge relied only on the affidavit submitted with the warrant application to issue the warrant, a reviewing court may only use the information 'found within the four corners of the affidavit' in determining if probable cause existed." *United States v. Eggerson*, 18-cr-110 (DWF/KMM), 2018 WL 6520648, at *3 (D. Minn. Sept. 27, 2018) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)), *report and recommendation adopted*, 2018 WL 5962481 (D. Minn. Nov. 14, 2018), *aff'd*, 999 F.3d 1121 (8th Cir. 2021). "[T]here must be

evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citation omitted). "However, judges are permitted to 'draw reasonable inferences from the totality of the circumstances' when making the probable cause determination." *Id.* (quoting *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017)).

Even if the search warrant lacks probable cause, "[u]nder the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citation omitted). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* (quotation omitted) (alteration in original). To assess the objective reasonableness of the executing officer, courts look to the totality of the circumstances, including information known to the executing officer but not presented to the issuing judge. *Id.* (citation omitted). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Leon*, 486 U.S. 897, 921 (1984). However, *Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the

warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid. *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007).

### c. Analysis

#### i. March 10, 2023 Warrant

Mr. Wiggins argues in conclusory fashion that the March 10, 2023 Warrant lacked probable cause, but does not specify how or why. (*See* ECF No. 22.) For the reasons given below, the Court finds the March 10 Search Warrant Affidavit is supported by probable cause.

"[W]hen probable cause depends on information provided by a source, the determinative factor is ... 'whether the information is reliable.'" *United States v. Evans*, 4 F.4th 633, 637 (8th Cir. 2021) (quoting *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013)). "Information may be sufficiently reliable to support a probable cause finding if … it is corroborated by independent evidence." *Keys*, 721 F.3d at 518. "When some information is independently corroborated, it is permissible for the issuing judge to conclude that the informant and the remaining information provided are reliable, even if uncorroborated." *Evans*, 4 F.4th at 637 (citation omitted). "[C]orroboration of minor, innocent details can suffice to establish probable cause." *Keys*, 721 F.3d at 518 (quotations omitted).

Here, the CI provided Detective Peek with information that a man named "Frank Wiggins" was selling methamphetamine in the Twin Cities area. (ECF No. 26-1 at 2.) This Frank Wiggins purportedly drove a white Cadillac truck and was known to carry a weapon. (*Id.*) Detective Peek conducted his own independent investigation and corroborated most of the CI's claims. (*Id.* at 2–3.) He found a man named Frank Irving Wiggins who drove a white GMC Yukon, which was similar in appearance to a white Cadillac truck. (*Id.*) Mr. Wiggins also had a criminal history of weapons possession and drug trafficking. When presented with a photograph of the Defendant,

the CI confirmed he was the same Frank Wiggins known to be trafficking in methamphetamine. (*Id.*) This was sufficient corroboration to establish probable cause to install the GPS tracking device on Mr. Wiggins' vehicle. *See, e.g.*, *Evans*, 4 F.4th at 637 (finding corroboration sufficient, in part, because the detective independently verified the suspect's address and criminal record and asked the source to look at a photo of the suspect). Moreover, the record supports a finding that the officers were acting in good faith reliance on the judge's probable cause determination in issuing the warrant, *see Leon*, 486 U.S. at 921, and Mr. Wiggins raises no argument to the contrary, *see Proell*, 485 F.3d at 431.

### ii. March 17, 2023 Warrant

Mr. Wiggins challenges the March 17, 2023 warrant both as lacking probable cause and on grounds that it was stale at the time of execution. The Court rejects both of these arguments. This search warrant was supported by all the information and evidence contained in the March 10, 2023 warrant and more, including: Detective Peek's observations that Mr. Wiggins regularly used the GMC Yukon to travel to various locations for 1-2 minutes at a time (ECF No. 26-2 at 3); that law enforcement officers observed Mr. Wiggins using the vehicle to sell methamphetamine to the CI in a controlled buy; and that the officers found plastic baggies testing positive for methamphetamine in the trash at Mr. Wiggins' residence (*id.* at 3–4). These allegations were sufficient to establish both a probability that Mr. Wiggins was engaged in drug trafficking and a sufficient nexus between that activity and the vehicle for probable cause to search it. *See, e.g.*, *United States v. Becker*, 2022 WL 17958795, at *1 (8th Cir. Dec. 27, 2022) (finding probable cause existed for a warrant to search a residence when officers observed a controlled buy between the CI and the suspect at the residence). Moreover, the good-faith exception applies, and Mr. Wiggin raises no argument to the contrary. *See Leon*, 486 U.S. at 921; *Proell*, 485 F.3d at 431.

8

Mr. Wiggins' challenge on grounds of staleness also lacks merit. When drug trafficking is at issue, the passage of weeks between the information supporting the warrant and the execution of the warrant generally does not render the warrant stale. *See, e.g.*, *United States v. Davis*, 867 F.3d 1021, 1028 (8th Cir. 2017) (finding warrant executed 10 days after reported drug-related activity not stale); *United States v. Resendiz*, 22-cr-240 (JNE/DTS) (D. Minn. March 1, 2023) ("In narcotics investigations 'weeks or months' between a reported act and the search does not necessarily make that information stale."), *report and recommendation adopted*, 2023 WL 2992817 (D. Minn. Apr. 18, 2023). Under these precedents, the five-day gap between the issuance of this warrant and its execution did not render it stale.

For the foregoing reasons, the Court finds both warrants were supported by probable cause and that the March 17, 2023 Warrant was not stale. The Court accordingly recommends that Mr. Wiggins' Motion to Suppress Evidence Obtained as a Result of Search and Seizures (ECF No. 22) be denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Government's Motion for Discovery (ECF No. [16]) is **GRANTED**;

2. Mr. Wiggins' Motion for Disclosure of Jencks Act Material (ECF No. [20]) is **DENIED**; and

3. Mr. Wiggins' Motion to Produce 404(b) Evidence (ECF No. [21]) is **GRANTED**.

9

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Wiggins' Motion to Suppress Evidence Obtained as a Result of Search and Seizures (ECF No. [22]) be **DENIED**.

Dated: August 22, 2023                          *s/ Dulce J. Foster*
                                                Dulce J. Foster
                                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).